342 So.2d 1298 (1977)
Richard Gilbert HOPTON
v.
Mrs. Ella Mae HOPTON.
Nos. 49099, 49636.
Supreme Court of Mississippi.
February 16, 1977.
*1299 John R. Countiss, III, W.E. Gore, Jr., Jackson, for appellant.
Tighe & Tighe, B. Stirling Tighe, Jackson, for appellee.
Before GILLESPIE, C.J., and SMITH and WALKER, JJ.
WALKER, Justice, for the Court:
This is an appeal from a decree of divorce rendered in the Chancery Court of Hinds County, Mississippi, in June of 1975. Appellant does not contest the granting of the divorce, but contends that the award of $500 per month alimony and $200 per month child support is excessive. The decree also provides that the husband should maintain an insurance policy on his life payable to the minor child of the parties, and that he should pay all medical expenses on behalf of the child.
Richard and Ella Mae Hopton were married on July 28, 1968, two months after her divorce from Bobby Belcher. The marriage was the third for Mrs. Hopton and the second for Mr. Hopton. Mr. Hopton has four children from his earlier marriage, one of whom is married. Mrs. Hopton has a daughter, named Brenda Belcher, from her previous marriage. Mr. and Mrs. Hopton have a daughter, Ella Marie, who was three years old at the time of the divorce.
Mr. Hopton is a plastering contractor. His taxable income, as shown by his tax returns, was $10,059.09 in 1970, $10,024.43 in 1971, $10,926.80 in 1972, and $18,324.96 in 1973. Mr. Hopton did not produce his tax records for the year 1974. (He had received an extension of time from the Internal Revenue Service.) However, during that year, he had the plastering contracts for the Baptist Hospital and the Deposit Guaranty Plaza. He testified that the base bid for the hospital was about $110,000, and the base bid for Deposit Guaranty Plaza was about $85,000. He testified that his profits usually ran between 5 and 7 percent of the base bid.
The value of Hopton's assets is unclear from the record. He and his wife jointly owned approximately $15,000 worth of stock in affiliated funds. The parties agreed, and the decree provided, that he pay $4,000 to Mrs. Hopton and thereby obtain sole ownership of this stock. He also owns 100 shares of stock in Federal Compress, although the record does not reflect its value. Hopton admitted owning some land in Florida, although its value is not clear. He also owns lots on Beatty Street and Gallilee Street in Jackson, on which warehouses are situated. He estimated that the lots would be worth about $16,000, *1300 of which $7,000 was still owed. Hopton also owns an automobile, as well as certain trucks and other equipment used in his business.
Mr. Hopton estimates that living expenses for himself and the three children of his first marriage run $658 per month. He must also pay $50 a month alimony to his first wife.
At the time of the divorce, Mrs. Hopton was working as a real estate salesman for Bailey and Bailey. Prior to that she worked for J.E. Carter. She earned $795 in 1973, and $4,897.69 in 1974. For the first six months of 1975 (the hearing was in June), she had earned $2,982.12. Mrs. Hopton estimated that her monthly business expenses would run about $65.
Mrs. Hopton and her daughter, Ella Marie, occupy a house on Woodlark Drive, which was occupied by the Hoptons during their marriage. The house originally had four bedrooms and two and one-half baths, although Mr. Hopton added on to it after the marriage. The house also has a swimming pool. Mrs. Hopton was given this house by her former husband, Bobby Belcher. Title to the house is in the name of Brenda Belcher. Although Mrs. Hopton claimed to have delivered the deed to the property to Brenda on July 22, 1968, the deed was not filed for record until September 5, 1973, when Mrs. Hopton wished to evict her husband from the house. The house was not fully paid for when the Belchers divorced, and Mr. Hopton made the payments on the house during the time of their marriage. She testified that at the time of her divorce from Hopton, the house was worth about $65,000, but $25,000 remained due on the mortgage. Mrs. Hopton also owned a house on Dixie Drive, which was given to her by her father. She testified that the property was worth about $15,000, and that the property was currently securing a note in the amount of $4,000. The house had been in Mrs. Hopton's name, but she deeded it to Brenda in anticipation of this divorce.
The record contains an extensive breakdown of Mrs. Hopton's claimed expenses. She claimed expenses in connection with the house on Woodlark Drive, including the payment on the mortgage, taxes, insurance, utilities and the like, in the aggregate of over $500 a month. She also claims large monthly amounts for clothes, shoes, beauty parlor, and $200 per month for a part-time maid and baby-sitter. Her total claimed expenses amount to $1,817.82 per month. (See Appendix A for a detailed breakdown of Mrs. Hopton's claimed expenses.)
The chancellor's award of alimony cannot be reversed unless it is manifestly wrong or against the overwhelming weight of the evidence. Bunkley & Morse, Amis on Divorce and Separation in Mississippi section 6.08 at 189 (1957). In this case, the chancellor has required a man whose taxable income, in the years covered by the record, averaged about $12,000 a year to pay $8,400 a year for the support of his wife and child. It is not impossible for Mr. Hopton to make these payments, but we find it to be manifestly unjust. The chancellor must consider not only the reasonable needs of the wife but also the right of the husband "to lead as normal a life as reasonably possible with a decent standard of living." Nichols v. Nichols, 254 So.2d 726, 727 (Miss. 1971). While Mr. Hopton might still be able to maintain a decent standard of living under this decree, it is clear to us that the needs of the wife have been overstated. A wife may not strip herself of her assets in order to obtain excessive support from her husband. Furthermore, we take note of the fact that Mrs. Hopton is, in fact, working and is capable of making a significant contribution to her own support. She has demonstrated an earning capacity of between $5,000 and $6,000 per year. Moreover, it is the duty of the mother as well as the father to contribute to the support and maintenance of their child when she has a separate income or estate. Miss. Code Anno. § 93-5-23 (1972).
For these reasons, we modify the decree so as to reduce the alimony payments to $300 per month and the child support to $150 per month. We make no allowance *1301 for her attorney's fees on this appeal from the divorce decree.
Mr. Hopton also appeals from a later decree of the chancery court adjudging him in contempt for failure to make the alimony payments provided in the divorce decree. Mr. Hopton admits that he has not made these payments, but contends that he was unable to do so. In such a case, the husband faces a very heavy burden of proving that he was absolutely unable to make the payments required by the court. Kincaid v. Kincaid, 213 Miss. 451, 456-57, 57 So.2d 263, 265 (1952). It is sufficient to note here that Mr. Hopton has not made such a showing. Therefore, the adjudication of contempt must be sustained. Furthermore, we allow Mrs. Hopton an additional $150 for attorney's fees incurred in connection with the appeal of the contempt citation. However, the amount adjudged to be due from Mr. Hopton must be reduced in accordance with the divorce decree as modified by this Court. Therefore, Mr. Hopton will have ninety days from the date this judgment becomes final to make all payments required by the decree as modified in this opinion and thereby purge himself of contempt.
NO. 49,099 AFFIRMED AS MODIFIED; NO. 49,636 AFFIRMED AS MODIFIED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, BROOM and LEE, JJ., concur.
APPENDIX A

 PER YEAR PER MONTH
House Payment (Rent) ____________________________________ $175.00
City Adv. Co. Taxes $1,200.00 __________________ 100.00
House Insurance 332.00 __________________ 27.67
Electricity _____________________________________________ 75.00
Gas _____________________________________________________ 30.00
Water & Sewerage ________________________________________ 50.00
Yard Maintenance ________________________________________ 40.00
Laundry & Dry Cleaning __________________________________ 30.00
Groceries, milk, sundries 250.00
Telephone _______________________________________________ 12.60
Pest Control ____________________________________________ 8.47
Car Expenses, gas, oil, greasing, minor repairs 100.00
Medicine & Drugs ________________________________________ 30.00
Honey's School Tuition $1,184.00 _____________________ 98.66
Baby Sitter & Part time maid ____________________________ 200.00
Honey's incidental expenses, entertainment, etc. 25.00
Honey's clothing & School uniforms ______________________ 50.00
________
$1302.40

Estimated approximate expenses of Mrs. Hopton not included in above.

Clothes ________________________________________________ $150.00
Accessories ____________________________________________ 50.00
Shoes __________________________________________________ 40.00
Beauty Parlor __________________________________________ 40.00
Cosmetics ______________________________________________ 15.00
Drugs __________________________________________________ 25.00
Medical Ins. ___________________________________________ 50.00
Entertainment of clients _______________________________ 25.00
Lunch __________________________________________________ 40.00
Realtors Dues _______________ $125.00 __________________ 10.42
Paper __________________________________________________ 20.00
Dr. Bills (estimated) __________________________________ 40.00
Multiple Listing Service dues __________________________ 10.00
 _______
 $515.42