478 So.2d 258 (1985)
Mrs. Helen Tisdale CRAFT
v.
Wyatt Eugene CRAFT.
No. 55039.
Supreme Court of Mississippi.
October 2, 1985.
*259 Dixon L. Pyles, Pyles & Tucker, F. Kent Stribling, Jackson, for appellant.
James W. Nobles, Jr., Jackson, for appellee.
Before PATTERSON, C.J., and PRATHER and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
These parties were divorced on September 14, 1977, on the grounds of irreconciliable differences. The divorce was granted by the Chancery Court of the First Judicial District of Hinds County, Mississippi.
The parties have three children: Steven, who was born April 11, 1962; Suzanne, born February 20, 1964, and Stacey, born December 9, 1969. The parties separated in November of 1976. In December of that year they began negotiations for a property settlement and support agreement. Unable *260 to obtain Mr. Craft's business records, Mrs. Craft filed a bill for discovery in the Chancery Court of Hinds County. A demurrer to this bill was sustained but Mrs. Craft was given time to plead over.
In the interim, a property settlement agreement was reached and joint motion was made for the dismissal of the bill for discovery which was granted.
Some two years later, Mr. Craft filed a petition to modify the decree, asking the chancery court to spell out his visitation rights with his daughter, Stacey. Thereupon, Mrs. Craft filed a cross-claim charging Mr. Craft with fraud in procuring the settlement agreement for the divorce. She further requested that she be awarded an additional property settlement and child support by an upward adjustment based upon the fraud. Mrs. Craft also sought attorney's fees in this action for $45,841.25.
After the claim and cross-claim were filed Mrs. Craft filed a notice to take Mr. Craft's deposition and to produce documents and memoranda showing property interests and income. On April 23, 1981, Mr. Craft moved for a protective order. No order was entered on this motion, and Mr. Craft failed to appear at the deposition. Mrs. Craft then moved for sanctions, asking for among other things attorney's fees and expenses. The chancellor found that Mr. Craft did not seasonably move for a protective order nor did he attempt to procure a protective order from the court. He, therefore, ordered Mr. Craft to pay Mrs. Craft the sum of $3,224.45 in attorney's fees and expenses. The case then came on for trial and we include herein the chancellor's finding:
On September 14, 1977, Helen Tisdale Craft and Wyatt Eugene Craft were granted a divorce by this Court... . This Final Decree provided inter alia that Mrs. Craft would have custody of the three minor children of the parties and that Mr. Craft would have reasonable rights of visitation. It was also provided that Mr. Craft would pay to Mrs. Craft $500.00 per child per month for each of the three children of the parties. He was also to pay for their education and automobiles under certain conditions. Mrs. Craft received all of the furniture with a few exceptions. Mrs. Craft had, prior to the settlement, received a house and lot, certain royalty interest, a 1976 Cadillac automobile, and a 50% interest in another home... . Mrs. Craft also received the sum of $205,000.00 as a cash settlement. Mr. Craft was to pay $100.00 per child per month to an educational fund for said children.
Some twenty-seven months after the Divorce Decree was entered, Mr. Craft filed a Petition to Modify....
Mrs. Craft responded, ..., and made her Answer a Cross Bill... . She alleged that the "Property Settlement and Child Custody Agreement" incorporated as a part of the Final Decree was inequitable. She asserted that Mr. Craft fraudently concealed his assets from her and misrepresented his financial status.
... .
Mrs. Craft testified that the parties married in 1958. She worked until the spring of 1962 and helped to pay their joint bills. She and Mr. Craft filed joint tax returns although she stated she knew little about his business or income. On February 15, 1977, she filed a Bill of Complainant for Bill of Discovery in an effort to gain knowledge of the worth of Mr. Craft. On joint motion, this cause was dismissed with prejudice by Decree dated May 16, 1977.
Mrs. Craft has a beauty shop from which she receives about $500.00 per month. This together with interest payments, oil royalty, and other income gave her a total of some $35,441.82 as income for 1981.
Mr. Craft has increased the $500.00 per month payment for the two girls to $600.00 making a total of $1,200.00 per month. Mrs. Craft says that the expenses for Susan, age 18, is $1,226.00 per month and Stacey, age 12, $913.00 per month.
... .

*261 Mrs. Craft said that she sold one house for $80,000.00 and purchased a home for $199,000.00. She sold the other house referred to above for a net of $9,000.00. She has a Certificate of Deposit for $100,000.00. She never made any complaint about the agreement until Mr. Craft filed the Petition to Modify... .
... Kent Stribling, who has represented Mrs. Craft in the divorce action, and ... Sam Scott, who represented Mr. Craft in the divorce action and discovery action, testified... . Suffice it to say, there was a good faith effort by the attorneys to reach the settlement. Mr. Scott stated that the first time he heard of the offer of $205,000.00 was when Mr. Stribling sent it to him.
Mr. Craft testified that Mrs. Craft would not let Stacey visit with him at his home or stay overnight with him... .
He further testified that he started making enough money in 1961 to support both of them, that by 1974 he had become a wealthy man and by 1981 had an annual income of about One Million Dollars. He stated that Mrs. Craft knew about his business during their eighteen years of marriage, that she signed the joint tax returns, and that they had a meeting of the minds with reference to the settlement and that the attorneys for each approved same. He further stated the $205,000.00 figure was what she asked for as a settlement.
Mr. Craft testified that he paid dental bills, medical bills, and auto expenses and many other bills over and above the $1,000.00 per month child support. He stated that he had no objection to an increase in the child support so long as it was a benefit to his children.
Mr. Wilbur Howie, a Certified Public Accountant, was called as a witness by Mrs. Craft. Mr. Howie had examined the tax returns of Mr. Craft. These returns showed a net income of $442,351.00 in 1977, $291,000.00 in 1978, $190,335 in 1979, $350,256.00 in 1980, and $864,396.00 in 1981. Mr. Howie stated that the returns were proper in the way they had been prepared and that Mrs. Craft could have obtained the tax returns before the Divorce.
.....
... The paramount question in this case is the prayer of Mrs. Craft that this Court award her a decree of not less than an additional $795,000.00 as a property settlement... .
It is apparent to this Court that the parties by the Divorce and Property Settlement intended to settle once and for all all property questions existing between them. They were represented by experienced attorneys who worked out the agreement over a period of several months. Mrs. Craft testified, at the time of the divorce, that she thought the settlement was fair. She executed the agreement and it was approved by her attorney. It is the opinion of this Court that there was no fraud involved on the part of Mr. Craft and that the prayer of Mrs. Craft for additional settlement funds be denied.
Based upon these findings, the chancellor ordered the appellee to increase Stacey's child support payments to $900 per month, and awarded Mrs. Craft $2,500 in attorney's fees.

I.

WAS IT ERROR NOT TO DISMISS MR. CRAFT'S PETITION TO MODIFY AS TO VISITATION?
The case came on for trial on June 16, 1982, and then was recessed to be continued on September 15, 1982. Mr. Craft objected to the recess for the reason that during the period of time until the case could be concluded he would have no visitation rights with Stacey.
The court ordered the parties to work out some regular visitation rights within five days, and that if they failed to do so the court would set its own visitation schedule.
Temporary visitation was worked out between the parties and Mrs. Craft now contends that as the two parties worked out the visitation it was not necessary for the *262 court to make the determination. It is true that equity favors amicable adjustments.
It is equally true that this adjustment did not take place until the parties were in court before the chancellor. We, therefore, find that the chancellor was not manifestly wrong in fixing the visitation and/or approving the visitation agreed upon by the parties under duress, and where the chancellor is not manifestly wrong he will not be reversed. Ross v. Segrest, 421 So.2d 1234 (Miss. 1982). There is no merit to this assignment of error.

II.

DID THE CHANCELLOR ERR IN FAILING TO VOID THE 1977 PROPERTY SETTLEMENT AND CHILD SUPPORT AGREEMENT AS HAVING BEEN INDUCED BY FRAUD?

AND

DID THE CHANCELLOR ERR IN FAILING TO REQUIRE MR. CRAFT TO MEET THE BURDEN OF PROOF?
These two assignments will be discussed together, in view of the fact that the crux of the argument by Mrs. Craft is that Mr. Craft at the time of the separation agreement withheld from her information about his financial condition, deprived her of independent advice, and perpetrated a fraud upon her so as to invalidate the original agreement. She further contends that at this time as Mr. Craft was the dominant figure in the marriage and the parties were still married there existed between them a fiduciary relationship and that, therefore, the burden of proof was upon Mr. Craft to prove that he had not withheld information from her and had not perpetrated a fraud upon her.
Both parties cite numerous cases from other jurisdictions which discuss this issue but to which we are not compelled to go. In the first instance the chancellor ruled that there was no fiduciary relationship, and he further ruled that Mr. Craft had not perpetrated a fraud in inducing the agreement.
On this record, there is ample evidence to uphold that finding of fact.
Furthermore, we find that when parties have separated and have entered into negotiations in contemplation of a divorce, each party having obtained competent counsel, and a suit has actually been instituted between the parties seeking discovery in order to facilitate the entry of an agreement in contemplation of divorce, it can no longer be said that a fiduciary relationship exists between the parties. They are adversaries plain and simple. This is particularly true where both of the parties are adults under no disabilities and well educated. It cannot be said that the parties to this action were not throughout the time of the separation, the agreement, and the divorce actively represented by competent counsel.
Furthermore, in the case of Warner v. Warner, 175 Miss. 476, 167 So. 615 (1936), this Court has already addressed this issue. In Warner, the parties separated and subsequently divorced. Prior to the divorce they entered into an agreement that read,
It is agreed by and between the parties to this contract that the party of the first part, W.A. Warner, does hereby pay to Mrs. W.A. Warner the sum of $100.00 (one hundred dollars) in full settlement of all that may be due her or to become due her for separate maintenance and attorney's fees, if any, the receipt of which is hereby acknowledged.
Id. at 478, 167 So. 615.
The wife then alleged that the agreement was executed at a time when she wasn't advised of her rights, and that she didn't have a chance to discuss it or seek advice from friends or relatives. Furthermore, she alleged that she was "induced to sign it by the false and fraudulent representations of the appellant as to his financial condition." Id. at 478, 167 So. 615.
The chancellor found the settlement to be void, because the wife was not aware of her husband's financial ability to pay more and was not advised by him of the nature and extent of his holdings.
*263 This Court reversed, holding that the evidence was insufficient to support the finding of any misrepresentation or fraud that would invalidate the previous settlement.
We find ourselves in the same situation this Court was in when it reviewed the record in Warner.
There being no fiduciary relationship, the burden of proving the fraud fell upon Mrs. Craft and that burden calls for clear and convincing evidence. Gardner v. Jones, 464 So.2d 1144 (Miss. 1985). The burden was not met.
In summary, in view of the fact that Mrs. Craft, (1) was represented by competent counsel, (2) sent a proposed settlement agreement to her husband's attorney, (3) did not complain about the settlement until some three and a half years after the divorce, (4) realized she was executing the settlement while dismissing the bill of discovery without gaining the business records, (5) and her attorney signed and agreed to the property settlement, and (6) was not unduly influenced nor was there a confidential relationship since the parties were adversaries, represented by counsel, and dealing with one another at arms' length, there is no merit to these assignments of error.

III.

DID THE CHANCELLOR ERR IN FAILING TO AWARD MRS. CRAFT AN ADDITIONAL PROPERTY SETTLEMENT AND CHILD SUPPORT BASED UPON SCIENTIFIC AND STATISTICAL FACTS SHOWN?
At the beginning of the trial, Mr. Craft made a motion in limine pertaining to the proposed testimony of Dr. James Parks, an economist from Belhaven College. The court reserved ruling on the motion, and then after hearing the testimony from Dr. Parks sustained the appellee's motion.
Mrs. Craft argues that the trial court should have awarded her $61,416.63. This is the difference between the $2500 per month she received during the separation from November, 1976 to October, 1977, and the $8,083.33 per month she should have received according to the tables showing household expenses increased by the consumer price index from 1977 until each child reached age 21. She arrives at the figure of $8,083.33 by reasoning that the amount needed to maintain the same standard of living as in 1977 is $97,000 per year. Divided by twelve, she reaches the figure $8,083.33.
The basis of this argument seems to be that the statistical data proferred by Mrs. Craft through the testimony of Dr. Parks should have been admitted into evidence and taken as conclusive.
It was not reversible error for the chancellor to refuse to admit into evidence the expert testimony from Dr. Parks. Speaking for the Court, Justice Walker in Sipe v. Farmer, 398 So.2d 1325 (Miss. 1981), said: "Since an expert witness, in a sense discharges the functions of a juror, his opinion should be admitted if it is clear that the jurors themselves are not capable ... of drawing a conclusion from the facts." Id. at 1329. It would be a decision of desperation for this Court to hold that the chancellor, sitting as a factfinder, is not capable of drawing a conclusion concerning child support from the facts presented to him. This is not to say that the chancellor might not have admitted the expert opinion testimony, but he would not be bound by it.
The record shows that from January 1, 1978, to December 31, 1980, Mr. Craft provided $46,547.80 for Steven, $60,726.07 for Suzanne, and $24,443.05 for Stacey. These amounts were sufficient to provide all of life's necessities plus many of its luxuries.
We concede that this does not cover the period from November of 1976 through October of 1977. However, the record there reflects that Mrs. Craft received $2500 per month for household expenses, which is corroborated by Mr. Craft. The record is silent as to what Mr. Craft expended in support of his children during the separation. Mr. Craft did testify, and it is uncontested, that the only thing that *264 changed in the life of his children when he moved out of the house was that he wasn't in the house anymore. Their monetary situation did not change one iota. Mrs. Craft offers no proof showing that during the separation from November of 1976 until October of 1977 only $2500 per month and no more was paid to the family by Mr. Craft. The assignment of error is without merit.

IV.

DID THE CHANCELLOR ERR IN FAILING TO AWARD MRS. CRAFT $45,841.25 IN ATTORNEY'S FEES?
The chancellor awarded Mrs. Craft $2,500 in attorney's fees for defending the petition to modify. She claims that $45,841.25 should have been awarded, since it was supported by evidence and there was no evidence to controvert the testimony showing her attorney's fees.
Many times this Court has stated the ground rules for the award of attorney's fees. See McKee v. McKee, 418 So.2d 764 (Miss. 1982); Kergosien v. Kergosien, 471 So.2d 1206 (Miss. 1985).
[W]e set forth the criteria for gauging the appropriate amount of attorney's fees in a divorce proceedings:
(1) A sum sufficient to secure one competent attorney is the criteria to be utilized;
(2) The fee depends on consideration of, in addition to relative financial ability of the parties, the skill and standing of attorney employed;
(3) Nature of case and novelty and difficulty of questions at issue, as well as degree of responsibility involved in management of the case, time and labor required, usual and customary charge in the community, and the preclusion of other employment by attorney due to acceptance of the case.
Kergosien at 1212.
We note, however, that both McKee and Kergosien were actions for divorce. This cause is a modification, where the rule is slightly different. We draw attention to our decision in Robinson v. Robinson, 112 Miss. 224, 72 So. 923 (1916). Robinson was also a modification. Justice Stevens, speaking for the Court, succinctly stated our law and stated it so well that we will quote it here in toto:
The allowance of alimony is justified by the natural obligation of the husband, as the bread winner of the family, to support his wife. If there is no legal marriage of the parties, there is no legal obligation on the husband for this support. Reed v. Reed, 85 Miss. 126, 37 South. 642. The parties hereto were divorced in the year 1910, and are now in the eyes of the law strangers one to the other. The petition which appellant filed in the court below, and which prompted the allowance of the attorney's fee complained of, was not a petition for a divorce, but one purely and simply for the custody of the children. It was the same issue that is frequently presented by habeas corpus. At the time it was presented, appellant had been freed of the primary moral and legal obligation to contribute to his wife's support and, without a statute justifying it, the court had no authority to award solicitor's fees in this case, and his action in so doing constituted error. Not only was there an absence of those obligations imposed by the marriage ties, but appellee in her very motion shows that she has a separate estate derived from the husband as a part of the gross sum awarded as permanent alimony. Our court has expressly held that this constitutes "a settlement between the husband and the wife as to the extent of the husband's duty to contribute to her maintenance and support," and that the decree awarding a lump sum as permanent alimony "is final after the term at which it is rendered." Guess v. Smith, 100 Miss. 457, 56 South. 166, Ann.Cas. 1914A, 300.
It may be that the circumstances of this case suggested to the learned chancellor that appellant should be chivalrous enough to employ counsel for both parties; that in again entering the open door *265 of the court, he should be considerate enough of his former wife to pay the admission fee of both and in doing so to adopt the "pay-as-you-enter system." We ourselves would promptly yield to this suggestion if there was any legal basis at all for it. But just why appellee should have thought of such a demand is a matter of speculation, unless her memory of her former days and the marriage obligations that once existed gives a touch of reality to the familiar couplet:
"You may break, you may shatter the vase if you will,
But the scent of the roses will hang round it still."
72 So. 923-24.
On this record it was established that Mrs. Craft did have a separate estate. It was further testified by counsel for Mrs. Craft from the witness stand that Mrs. Craft was able to pay the legal fees.
Once this testimony was given, the reasonableness of the fee charged by her attorneys became of no moment as she had not cleared the first hurdle to determine that she would be entitled to fees at all.
It is further pointed out that this Court has stated in Walters v. Walters, 383 So.2d 827 (Miss. 1980), that the matter of determining attorney's fees in divorce cases is largely entrusted to the sound discretion of the trial court and the award must be fair and just to all concerned after it has been determined that the legal work being compensated was reasonably required and necessary. Again, Walters discusses attorney's fees in a divorce.
Under our law and the facts presented on this record, Mrs. Craft was not entitled to attorney's fees in any sum in this action. However, counsel for Mr. Craft makes no point of the $2500 attorney's fee awarded by the chancellor and has filed no cross-appeal complaining of its award. We, therefore, affirm the chancellor in his award of $2500 and find no merit to the assignments of error by Mrs. Craft.

CROSS-APPEAL

DID THE CHANCELLOR ERR IN GRANTING SANCTIONS AGAINST MR. CRAFT FOR NOT APPEARING AT THE NOTICED DEPOSITION?
Mississippi Code Annotated § 13-1-237(d) (Supp. 1984), provides:
Failure of party to attend at own deposition or serve answers to interrogatories or respond to request for inspection. If a party or an officer, director, or managing agent of a party or a person designated under sections 13-1-230(b)(6) or 13-1-231(a) to testify on behalf of a party fails (1) to appear before the officer who is to take his deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under section 13-1-233, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under section 13-1-234, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subsections (A), (B), and (C) of subsection (b)(2) of this section. In lieu of any order in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
The failure to act described in this subsection may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order under section 13-1-226(c).
Mississippi Code Annotated § 13-1-226(c) (Supp. 1984), provides:
Protective orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order which justice *266 requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; ... the court may make any other order which justice requires to protect the party or witness from annoyance, embarrassment, oppression or undue burden or expense, including provision for payment of expenses attendant upon such deposition or other discovery device by the party seeking same.
The chancellor reasoned,
MCA Section 13-1-226(c) providing for an order that a deposition not be taken places the burden on the proposed deponent to get such an order and not just make a motion for such an order, and unless a proposed deponent obtains a court order that postpones or dispenses with his duty to appear for a noticed deposition the duty to appear remains even if a motion for such an order is on file. Wyatt Eugene Craft and his counsel appeared to believe that he need not appear if a motion under MCA Section 13-1-226(c) is on file, even though it had not been acted upon. Such a construction of the statutes for discovery would result in totally frustrating the discovery procedures. This case amply demonstrates that Wyatt Eugene Craft, or any other deponent, by simply filing a motion under MCA Section 13-1-226(c) could evade giving a deposition indefinitely. Under the discovery statutes it is for the court, not the deponent or his counsel, to relieve him of his duty to appear.
Mr. Craft argues more against the amount of the sanction than against the sanction itself. He contends that the expenses of one competent attorney and the court reporter is all that is called for under Rule 37(d) of the Mississippi Rules of Civil Procedure and, therefore, the award should be reduced to $1,398.
We disagree. The sanction was proper. The amount was justified on the record, and we affirm the chancellor in his award of sanctions.
In summary, we conclude that there was no confidential relationship between the parties since they were adversaries dealing at arms length; that the burden of proof was not upon Mr. Craft to show by clear and convincing evidence that Mrs. Craft made a voluntary and knowing decision in dealing with the property settlement; that Mrs. Craft proved no fraud in the procuring of the settlement agreement by Mr. Craft; that Mrs. Craft was not entitled to retroactively adjust child support from November of 1976 through October of 1977; that the chancellor did not err in granting sanctions against Mr. Craft for failing to appear at the noticed deposition; and that Mrs. Craft failed to prove that she was entitled to attorney's fees of $45,841.25 in pursuit of this modification hearing, and that the $2500 attorney's fees awarded will be affirmed as it was not appealed.
AFFIRMED ON DIRECT AND CROSS APPEALS.
PATTERSON, C.J., WALKER, ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and ANDERSON, JJ., concur.