564 So.2d 839 (1990)
Linda Carol CUMBERLAND
v.
Michael Floyd CUMBERLAND.
Linda Carol CUMBERLAND
v.
Michael Floyd CUMBERLAND, Johnny Cumberland and Mary Cumberland.
Linda Carol CUMBERLAND
v.
Michael Floyd CUMBERLAND, Johnnie Floyd Cumberland and Mary Henderson Cumberland.
Nos. 89-CA-803, 89-CA-242 and 07-CA-59593.
Supreme Court of Mississippi.
June 6, 1990.
*840 Linda Carol Cumberland, Jackson, pro se.
Kevin D. Lewis, Jackson, for appellant.
Robert D Jones, Jordan & Jones, Meridian, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court.

I.
For five years today's once married litigants have sought in the judicial process an instrument of revenge, only to suffer the familiar effects of vengeance: random excess and self-consumption. Each has inflicted substantial injury (monetary and *841 otherwise) upon the other, and upon our judicial system as they have consumed so much of its meager resources, but none so great as the injury they have visited upon their vicarious victims: their two sons. In the end our courts have absorbed their blows, been seen resilient and decree an end we believe vindicates the integrity of the system and at once protects the legal interests of these two boys, though we know it is but a crude and partial approximation of justice.

II.
On May 20, 1985, the Chancery Court of Lauderdale County, Mississippi, adjudged that Linda Carol Cumberland (Linda) and Michael Floyd Cumberland (Michael) were divorced on grounds of irreconcilable differences. Miss. Code Ann. § 93-5-2 (Supp. 1985). The judgment of divorce incorporates a child custody and support agreement, see Newell v. Hinton, 556 So.2d 1037, 1043 (Miss. 1990), the principal provisions of which vested custody of Michael F. Cumberland, II, born November 21, 1973, and John Wesley Cumberland, born February 22, 1977, in their mother, Linda, and ordered their father, Michael, to pay as child support $400.00 per month per child.
Two months later the parties were back in court. These three consolidated appeals arise from proceedings dating back to December 10, 1985, when Michael sought to cite Linda for contempt, charging her interference with his visiting his son, Michael, II. Characteristically, Michael sought as a sanction suspension of his child support obligations. Ten days later, Linda retaliated, asking the Court to terminate Michael's visitation rights.
The fighting soon escalated, as Michael sought to modify  and reduce  his child support payments. Of note, Michael, once in court, acted unilaterally. In May of 1986, Michael began paying only $560.00 per month, or $280.00 per child per month. He cited the financial difficulties of his employer which had reduced his salary, plus Linda's new and remunerative employment. Beginning in August of 1986, Michael restored five percent of his unilateral child support reduction because his own salary reduction had been restored.
The next eighteen months saw a plethora of pleadings and bloody battles marked by excessive satellite litigation.[1] The Chancery Court struggled like Hercules against the Hydra while at once wallowing in the Augean Stables until June 8, 1987, when the Court sought to calm the chaos, ordering (1) that both parties should merge all pending claims into one consolidated pleading which would be filed on or before June 20, 1987; (2) a schedule for the completion of numerous outstanding discovery matters; (3) and that the case be tried on September 21, 22, 23 and 24, 1987.
On June 22, 1987, Michael filed his consolidated complaint. To the end that the flavor of the proceedings below may be sensed, we summarize Michael's allegations  and thereafter Linda's  although by no means are all relevant to this appeal.
Michael alleged first that there had been a material change in circumstances, "including an increase in respondent's [Linda's] income and earning capacity, decrease in movant's [Michael's] income and earning capacity, and increase in movant's expenses, including those related to an Internal Revenue Service (IRS) investigation, and a change due to a failure of Michael F. Cumberland, II to visit and maintain a normal relationship with his father, commencing in 1985." As a result of these changes, Michael asked that his child support payments be reduced, retroactive to 1985. Michael demanded that Linda be held in contempt for her failure to sign IRS Form 8332 in order that he might claim the minor *842 children as dependents. He also asked for attorney's fees, plus all costs.
On June 22, 1987, Linda filed her consolidated pleading. Linda alleged that there had been a material and substantial change in circumstances since the judgment of divorce, as follows: (1) Michael continually wrote harassing and threatening letters to Linda, made like telephone calls, and continually threatened Linda with economic ruin and custodial sanctions; (2) Michael had so abused his telephone privileges with the minor child, Wesley Cumberland, that those privileges should be terminated or, alternatively, that Michael should be ordered to pay all costs required to provide a separate telephone; (3) Michael had willfully, continually, obstinately and contumaciously failed to pay the proper amount of child support such that he was currently in arrears in the amount of $5,620.00; (4) Michael had subjected the minor child, Wesley Cumberland, to religious dogma and practices inconsistent with the religious and moral traditions and guidelines practiced by Linda, the custodial parent; (5) Michael had failed to comply with the provision of the judgment of divorce that required that he maintain $100,000.00 life insurance policies for each child; (6) Michael had intentionally refused to pay child support in an effort to create economic pressure and cause Linda intentional emotional distress, and caused Linda to have to leave her employment. Linda demanded relief on each point, and, as well, asked that all reasonable attorney's fees and costs of the proceedings be assessed against Michael.
Finally, Linda sued Michael in tort for his "outrageous conduct and intentional infliction of emotional distress" and demanded judgment in the amount of $100,000.00 actual damages and $500,000.00 punitive damages.
Not even this consolidation calmed the waters, for the parties were at it again in a matter of days. The Court held the line  that the claims for litigation were those asserted in the June, 1987, consolidated pleadings and none others. Mercifully, trial began September 22, 1987, consuming ten days intermittently, concluding on March 30, 1988. The Court endured and in the end filed an opinion that began appropriately,
The primary problem in the trial of this action was that [Michael] and [Linda] have a bitter, hostile, intense and aggressive aversion for each other, and the aversion of the litigants eventually spread to and was manifested in the actions of their attorneys. Compounding the situation was the friendship of [Michael] and his attorney, Robert D. Jones, and the friendship of [Linda] with her attorney, Patricia Alexander, and her employment by Attorney Roland Lewis. The close friendships between attorneys and clients did not lend itself to complete objectivity of counsel as to their courtroom conduct.
Final judgment was entered on August 10, 1988, ordering inter alia, that Michael pay past due child support (for the period May 5, 1986, through June 5, 1987) in the sum of $5,620.00, plus interest. Brand v. Brand, 482 So.2d 236, 238 (Miss. 1986).
Subsequent litigation generated supplemental opinions and judgments on September 16, 1988,[2] and February 3, 1989. Effective December 16, 1988, Michael F. Cumberland, III went to live with his father. The Chancery Court has ratified this move. En route the Court has directed that Michael pay no more periodic child support, that each parent is responsible for the support, and maintenance and education of the child in his or her custody.
Time and attrition appear to have settled what law and litigation could not. Nevertheless, Linda appeals all, and we have consolidated the three appeals for purposes of hearing consideration and decision.

*843 III.
Linda argues that the Chancery Court erred when it denied her an award of damages on her complaint that Michael's intentional and outrageous conduct had inflicted upon her severe emotional distress. Linda's complaint sounds in tort but her argument is technical.
On June 22, 1987, Linda filed her consolidated pleading, charging intentional infliction of emotional distress, and demanding actual damages and punitive damages. Michael made no answer to this claim, and on September 21, 1987, Linda requested the Chancery Court to enter judgment against Michael by default. The Court denied Linda's motion on grounds the pre-trial order required the parties to file consolidated pleadings as the pleadings to put an end to pleading; hence, answers were neither contemplated nor required.
Default judgments are regulated procedurally by Rule 55, Miss.R.Civ.P. That rule grants our trial courts a significant discretion when one party seeks judgment by default against another, as the official comment thereto and our decisions make clear. The Chancery Court's June 8, 1987, order contemplated that each party would file a consolidated pleading, stating all claims and issues to be litigated, and that thereafter, pleadings would cease. It is apparent that Michael was ready for trial on this issue, and Linda certainly suffered no prejudice by his failure to answer. The Chancery Court in no way exceeded its discretionary authority when it refused to enter judgment in Linda's favor by default, instead choosing to hear Linda's claim on its merits. See Shannon v. Henson, 499 So.2d 758, 762-63 (Miss. 1986); Bryant, Inc. v. Walters, 493 So.2d 933, 936-37 (Miss. 1986); Wilson v. South Central Mississippi Farmers, Inc., 494 So.2d 358, 360 (Miss. 1986); see generally, Burkett v. Burkett, 537 So.2d 443, 445 (Miss. 1989).

IV.
Linda recovered $5,620.00 plus interest in past due child support, successfully resisted Michael's original plea to reduce his support obligation, and now argues that the Chancery Court erred in denying her less than modest claim of "reasonable" attorney's fees in the amount of $54,391.66, plus $961.90 in court costs. She again complains of the July 15, 1988, opinion which was not reduced to judgment until August 10, 1988.
To put the issue in context we must review the proof on the merits of the parties' principal claims: Michael's demand for reduction in his child support obligations (which the Chancery Court denied  as of June, 1987), and Linda's claim for past due child support (which the Court granted  through June, 1987) and for a contempt citation (which the Court denied).
Michael convincingly proved he had suffered a substantial reduction in income, though (for the period in issue  through June of 1987) not in assets. On May 20, 1985, the date of the divorce, Michael was employed by Meridan Steel Corporation as general manager and executive vice president. His monthly gross income was between $5,600 and $5,700, consisting in part of a weekly salary of $1,175 and a monthly guaranteed bonus of $550. Michael also received a yearly bonus that varied according to the profitability of the company. For the year 1985, Michael's gross income reported for tax purposes was $70,826. His monthly expenses were $3,089.40. Additionally, Michael submitted an unaudited personal financial statement to the Bank of Meridian showing as of October, 1985, a net worth of $278,500: assets of $340,950 minus liabilities of $62,300.
Michael's problems began modestly enough in April, 1986, when Meridian Steel cut his pay by ten percent. Subsequently, Meridian Steel filed for Chapter 11 bankruptcy but soon thereafter restored five percent of Michael's ten percent salary reduction. The bottom fell out on October 3, 1986, as Meridian Steel's bankruptcy reorganization caused a management personnel reduction. Michael was fired.
Michael went to work for his father's company, Cornett Van and Storage, Inc., but at a greatly reduced salary of $400 per week, his net weekly income, $302.80, being even less. Michael maintained his level *844 of living by selling his shares in Meridian Steel for $80,000 prior to October 1, 1986, and receiving a deferred annual bonus from 1985 of $29,000 to $30,000. Michael reported gross income of $119,046 for 1986. Testimony at the trial further showed that Michael's monthly expenses as of July 1987 were $2,715 including $500 for what he denominated as child related expenses.
In the meanwhile Linda was employed by the State Department of Education as a psychometrist, administering IQ and other similar types of tests. Her employment in that job began April 15, 1985. Her initial gross salary was $1,281.45, increased to $1,518.40 by August 1985.
On August 20, 1986, Linda left her job with the Department of Education in order to pursue, as she stated in her letter of resignation, "an opportunity in publishing that I feel I cannot decline." Her publishing opportunity was a manuscript she had been working on, related to her divorce and ongoing courtroom experiences. As of the time of the trial Linda's writing efforts had produced no profit. Linda also did some consulting work as a psychometrist for the Clinton Public Schools and on several occasions for attorneys. Without specifying the sources, Linda testified that her income for 1985 and 1986 was similar, between $14,000 and $20,000 annually.
On the matter of expenses of the children in May, 1985, Michael had estimated $615.00 per month. Linda disagreed and suggested a figure between $900 and $1000. Significantly, Linda and the children had been living in Jackson for five months prior to May 20, 1985. Linda's estimate of the monthly expense for her and the two children at the time of the trial of the first action was $2,137.
On the child support reduction/compulsion issues, and Linda's demand for citation of contempt, the Chancery Court made extensive findings of fact that are essentially as above. The Court adjudged that Michael owed back child support in the amount of $5,620.00 plus interest. The Court held Michael's assets adequate that his support obligation through June of 1987 should not be reduced. Nevertheless, the Court found Michael's conduct less than contumacious and denied Linda's prayer that he be cited for contempt.
On the issue of attorneys' fees, the Chancery Court noted that this had hardly been a normal post-divorce support reduction/compulsion/contempt litigation. Excessive satellite litigation and unchecked personal animosities between the parties were but a few of the aberrations, reflected in the record, all of which influenced the matter of attorneys fees. The Court observed that both litigants had prevailed on some issues and failed in their proof of others. The Court said
Plaintiff in this action has been granted a part of the relief that he requested and has been denied a part of the relief that he has requested. The counter-claimant in this action has been granted a part of the relief that she requested and she has been denied a part of the relief that she has requested. The counter-defendant has successfully defended a part of the relief that the counter-claimant requested and the defendant has successfully defended a part of the relief that the plaintiff requested.
The Chancery Court also found that both parties had "education[[3]], work experience, earning capacity and employment." Noting that Michael's request for attorney's fees was considerably less than Linda's, the Chancery Court found that Linda's request was excessive and unreasonable.
The standards for an award of attorney's fees on a motion to modify a divorce decree are much the same as in an original action. J. Bunkley & W. Morse, Amis on Divorce and Separation in Mississippi § 5.08 (1957). Our law vests the Chancery Court with considerable discretion and the Court's findings on the issue will not be disturbed unless manifestly wrong. Carpenter v. Carpenter, 519 So.2d 891, 895 (Miss. 1988); Milam v. Milam, 509 So.2d 864, 866 (Miss. 1987); Devereaux v. Devereaux, 493 So.2d 1310, 1314 *845 (Miss. 1986); Kergosien v. Kergosien, 471 So.2d 1206, 1212 (1985); Trunzler v. Trunzler, 431 So.2d 1115, 1116 (Miss. 1983); McKee v. McKee, 418 So.2d 764, 766 (Miss. 1982); Walters v. Walters, 383 So.2d 827, 828 (Miss. 1980).
In denying Linda's fee application, the Chancery Court relied heavily on Craft v. Craft, 478 So.2d 258, 264-65 (Miss. 1985). Where an ex-wife has assets out of which she can pay a reasonable attorney's fee, Craft denies any idea of an automatic award for defending a petition to modify.
Undaunted, Linda appeals and predicates her claim on three grounds: (1) the Chancery Court erred in failing to find Michael in contempt where a finding of contempt would have required an award of attorneys' fees; (2) since Michael failed to prove a material change in circumstances, she should have been awarded attorneys' fees; (3) Michael's pleadings failed to allege any grounds for modification and he committed numerous discovery abuses. We will consider each.
Linda's first argument is in two steps: that Michael should have been found in contempt of court and that, if he had been found in contempt of court, an award of attorney's fees would have followed as the night the day. She cites Pearson v. Hatcher, 279 So.2d 654, 656 (Miss. 1973). The problem with the argument is that the Court below held the evidence did not show Michael in contempt. Although Michael unilaterally reduced his child support payments, the Court refused to find his conduct contumacious, primarily because Linda's proof did not satisfy the heightened "clear and convincing" standard and because Michael had also experienced a substantial reduction in income.
Generally speaking, contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than are we. See, e.g., Smith v. Smith, 545 So.2d 725, 727 (Miss. 1989); Milam v. Milam, 509 So.2d 864, 866 (Miss. 1987); Walters v. Walters, 383 So.2d 827, 829 (Miss. 1980). Suffice it to say that we are not about to disturb the Court's exercise of its discretion in this matter. Failing a finding of contempt, Linda's first argument for fees fails as well.
Linda raises a second point. Since she successfully defeated Michael's efforts to reduce his child support obligation (through June of 1987), Linda argues she was automatically entitled to reasonable attorney's fees, citing Gresham v. Gresham, 199 Miss. 778, 25 So.2d 760 (1946). In Gresham a divorced husband, required to pay child support in a divorce decree, haled his ex-wife into court. In this setting the Court said:
[s]eeking, without justification, alteration of his liability to her from a Court decree fixing it, [he] should pay for her an attorney's fee. Otherwise, he could sue her so often as to impose an oppressive burden on her allowance in resisting his repeated applications.
Gresham, 199 Miss. at 785, 25 So.2d at 762; see also Rogers v. Rogers, 373 So.2d 816, 818 (Miss. 1979); Spradling v. Spradling, 362 So.2d 620, 624-25 (Miss. 1978).
Craft v. Craft, 478 So.2d at 264-65, suggests this general rule does not hold where the equities are otherwise. This Court has repeatedly recognized the importance of a spouse's ability to pay on questions of award and quantum of attorney's fees. Carpenter, 519 So.2d at 895; Dillon v. Dillon, 498 So.2d 328, 331 (Miss. 1986); Devereaux, 493 So.2d at 1314; Cox v. Moulds, 490 So.2d 866, 871-72 (Miss. 1986); Trunzler, 431 So.2d at 1116; Cameron v. Cameron, 276 So.2d 449, 450 (Miss. 1973); Nichols v. Nichols, 254 So.2d 726, 727 (Miss. 1971). We have specifically said such in cases where the issue as here is child support. Craft v. Craft, 478 So.2d at 264-65; Trunzler, 431 So.2d at 1116; Moore v. Moore, 372 So.2d 270, 272 (Miss. 1979); Pearson v. Hatcher, 279 So.2d 654, 256 (Miss. 1973); Castleberry v. Castleberry, 214 Miss. 94, 98, 58 So.2d 67, 69 (1952). We say all of this against the backdrop of settled law that our law obligates each spouse to provide financially for his or her children, given his or her resources and opportunities. See, e.g., Miss. Code Ann. *846 § 93-5-23 (Supp. 1989); Hopton v. Hopton, 342 So.2d 1298, 1300 (Miss. 1977); Hand, Mississippi Divorce, Alimony and Child Custody, § 11-11 (1981).
In the case sub judice, the Chancery Court specifically found that Linda possessed the ability to earn sufficient income to pay her attorney's fees. The record shows that she possessed the ability to earn an income, that while modest, would have sufficed to pay an attorney (instead of the two she employed) a reasonable fee for a job reasonably done. The Chancery Court's July 15, 1988 opinion clearly indicates he believed that much of the expense Linda's attorneys incurred in litigating the case was unreasonable. See Smith v. Smith, 545 So.2d 725, 729 (Miss. 1989); McKee v. McKee, 418 So.2d 764, 767 (Miss. 1982).
Finally, there is the matter of Michael's discovery abuses. No doubt some occurred, but we must measure against these the substantial satellite litigation Linda generated to which Michael had to respond, all of which inflicted great costs on all concerned. The Court below regarded this a standoff, and we do not disagree.
In the end, this is hardly an ordinary case in which an ex-husband sought a reduction of his child support payments and was denied relief. Where there has been such a volume of claims and counter-claims and intervening discoveries disputes, the equities differ and in this instance, the Chancery Court found them relatively balanced. Having in mind all that has gone before, the Court was within its authority when it held Linda entitled to no award of attorney's fees. Craft v. Craft, supra.

V.
On September 20, 1988, barely forty days after the original judgment here appealed from, Michael again moved to modify  and reduce  his child support obligation.[4]
Testimony at the trial of January 27, 1989 disclosed that Linda's yearly gross income for 1988 was $28,400 including $1000 in alimony she would no longer receive. Linda's income and expenses statement indicated that her monthly gross income was $2367. For the period of July 1987 through August of 1988, Michael's monthly gross income was $1732; in September of 1988 his income was 0; from October of 1988 through December of 1988 his gross income was $2165. He also testified that he liquidated his IRAs totalling $17,000. He sold his horse trailer for $1700. He testified that he had disposed of all his assets, except for his home, a truck and two horses, one of which was a gift to one of his sons. During this period of time Michael married anew, this time to Brenda Cumberland who was employed.
While the matter was pending, the oldest child, Michael, II, went to live with his father. The Court found that "both parents receive approximately the same amount of money" and, as one child lived with each, terminated all child support. We consider that the Chancery Court was within its authority in so doing. Michael had experienced a substantial reduction in his income. Conversely, Linda had experienced an increase in hers. Linda shoulders no less obligation than does Michael to provide for the support of the children out of the financial resources reasonably available to her. See, e.g., Tedford v. Dempsey, 437 So.2d 410, 421-22 (Miss. 1983); Hopton v. Hopton, 342 So.2d 1298, 1300 (Miss. 1977). There has clearly been a material change in circumstances since the Court originally approved the child support provisions of the settlement agreement. The adjustment the Court has made in support is responsive to that change of circumstances.
Notwithstanding, Linda argues that the Chancery Court erred when it made the adjustment in child support retroactive to July 1, 1987. This, Linda says, has effectively divested her children of support which had become vested.
*847 We begin with familiar premises. Child support is awarded to the custodial parent for the benefit and protection of the child. Alexander v. Alexander, 494 So.2d 365, 368 (Miss. 1986); Hailey v. Holden, 457 So.2d 947, 950 (Miss. 1984). Child support benefits belong to the child, and not the parent who, having custody, receives such benefits under a fiduciary duty to hold and use them for the benefit of the child. Alexander v. Alexander, 494 So.2d at 368; Trunzler v. Tunzler, 431 So.2d 1115, 1116 (Miss. 1983). We have held repeatedly that child support payments vest in the child as they accrue and, once vested, may not be modified or forgiven. Thurman v. Thurman, 559 So.2d 1014, 1016-1018 (Miss. 1990); Brand v. Brand, 482 So.2d 236, 237 (Miss. 1986); Hailey v. Holden, 457 So.2d 947, 951 (Miss. 1984); Hambrick v. Prestwood, 382 So.2d 474, 476 (Miss. 1980). The problem is whether the Chancery Court's judgment predicated on its finding there was a material change in circumstances relates back to the date the movant first filed and sought reduction. We hold that it may not.
Thurman addressed the point only a few months ago. First commending the moving father/ex-husband for seeking relief through the courts  a fact there and here substantially adequate to avoid a finding of contempt of court, Thurman held the payments that accrued during the pendency of litigation were nevertheless vested the same as any others. Thurman ordered the child support obligor to pay at the original rate up through and including the final judgment in the Court below.
The rationale behind this view is not difficult to divine. No party obligated by a judicial decree to provide support for minor children may resort to self help and modify his or her obligation with impunity. The interest of children weighs in the judicial mind far heavier than those of either parent.[5] More pragmatically, the view adopted by the Court below and for which Michael argues could prove counterproductive and an inducement to delay. The rule we announced in Thurman and reaffirm today provides sharp incentives for one who would have his support obligation reduced to bring the matter to trial as expeditiously as possible.[6] Here it is quite possible that, had Michael known he could obtain no forgiveness of any part of his child support obligation short of a hearing, he might have pretermitted some of his tactical maneuvers which only served to fuel the fires and delay the final decree. Accordingly, the reduction in Michael's child support obligations becomes effective only from and after February 3, 1989.

VI.
Linda filed the complaint commencing yet another action on September 24, 1987. This action was commenced separately from the primary action which included the previously discussed request for payment of delinquent child support. She alleged that Michael had conveyed some 15.2 acres of farm property to his father, fraudulently for virtually no consideration, in order to protect the property from any judgment for the delinquent child support Linda might obtain in the primary civil action. Ab initio, the Court found that
said conveyance under the existing circumstances in August, 1986, was a transfer of assets by MC for a doubtful and unspecified debt; and that, even if the debt were valid, due and owing, the value of the real property conveyed substantially exceeded the amount of the alleged debt. The timing of the conveyance, as well as the circumstances, are just too much to be coincidental.
On August 31, 1988, Michael tendered to the Chancery Court for Linda's benefit the amount owing under the August 10 judgment for unpaid child support. On September *848 16, 1988, the Chancery Court entered its judgment dismissing the claim and ordering that the judgment roll and lis pendens book be marked satisfied.
Linda claims that the Chancery Court erred in dismissing her fraudulent conveyance complaint on the grounds that payment of the $5,620 plus interest judgment would extinguish Michael's liability. She asserts that the lien she sought on his property was for the purpose of securing all amounts presently owed. At the time of the hearing on her fraudulent conveyance complaint, the divorce decree of May 20, 1985, remained unmodified. The amount that Linda claimed was owed by Michael was $11,620. Therefore, the Court erred in finding that Michael's liability had been extinguished.
The lis pendens statute and law interpreting it dictates that upon payment of a debt the lien is extinguished. The Court found that Michael had tendered the amount of the judgment and thus correctly dismissed the fraudulent conveyance claim.
However, as provided in Part V above, the Court has ordered that Michael is obligated for child support payments from July 1, 1987, until February, 1989, in the aggregate sum to be fixed on remand. At present the Court has no way of knowing whether security for such payment may be required. Certainly nothing here suggests that the Court ought to impose any lien to secure payment of this child support arrearage, but because this Court cannot know or decide the matter, we vacate the judgment of September 16, 1988, only to the extent necessary to provide the Court below with such opportunity as may be proper to consider the needs for security with regard to the aforesaid child support arrearage or any of Michael's further obligations to and for the benefit of his children.

VII.
We have considered the matter of costs. By reason of the unusual circumstances of this case, which we have recounted above only partially, we regard the (in)equities indistinguishable as between the parties. We order that all taxable court costs incident to the consolidated appeals be aggregated and then divided and one-half taxed to Linda Carol Cumberland and the other half taxed to Michael Floyd Cumberland. Rule 36(a), Miss.Sup.Ct. Rules.
No. 07-CA-59593  AFFIRMED; No. 89-CA-242  REVERSED AND RENDERED; No. 89-CA-803  VACATED IN PART AND REMANDED. ALL TAXABLE COSTS INCIDENT TO THE CONSOLIDATED APPEALS TO BE AGGREGATED AND DIVIDED AND ONE-HALF TAXED TO LINDA CAROL CUMBERLAND AND THE OTHER HALF TAXED TO MICHAEL FLOYD CUMBERLAND.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN,
ANDERSON, PITTMAN and BLASS, JJ., concur.
DAN M. LEE, P.J., not participating.
NOTES
[1] We have found Linda's war upon the chancery judges themselves most vexing. The case was originally assigned to Judge Jerry Mason whom Linda peppered with recusal motions, including an application to this Court for extraordinary writ, which we denied. On October 19, 1988, Judge Mason stepped down and the case was assigned to Judge George Warner, who was greeted with like treatment, culminating in Linda's suit against these judges in United States District Court charging an assortment of imaginary sins. None of this, however, generates issues we must adjudge today.
[2] On November 23, 1988, this Court denied Linda's petition for extraordinary writ wherein she sought an order of this Court that Judge Mason be removed from the case. Shortly thereafter, Judge Mason voluntarily stepped aside and was succeeded by Judge Warner. See footnote 1, supra.
[3] Michael has a B.A. in business administration, and Linda has a B.A. in English and a Masters degree in psychology specializing in psychometry.
[4] The judgment of August 10, 1988, denied Michael's motion for a reduction of child support through June of 1987 only.
[5] Hence, the distinction we find between child support reductions, which may not "relate back" to the date of filing, and alimony reductions, which may. McHann v. McHann, 383 So.2d 823, 825-26 (Miss. 1980).
[6] Where the non-movant engages in dilatory tactics and causes unreasonable delay, the trial court should not hesitate to exercise its inherent powers and order sanctions as may be appropriate.