# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CP-00920-SCT

*ROBERT D. EVANS*

*v.*

*BEVERLY B. EVANS*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/10/2007 |
| TRIAL JUDGE: | HON. BILLY G. BRIDGES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ROBERT D. EVANS (PRO SE) |
| ATTORNEY FOR APPELLEE: | SUSAN CAROLE SMITH |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 11/20/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1.     Robert Evans (Evans) appeals a final judgment of the Washington County Chancery Court denying his request for downward modification of his child-support obligation, and then ordering that he pay seventy-five percent of the future college expenses for his youngest child, Robert. Evans filed a counter-complaint to a claim filed by his former wife, Beverly Evans (Beverly), in which she requested an increase in the monthly child-support obligation, payment of all college expenses for their daughter Elizabeth, payment of back child support, and attorneys' fees from Evans. Evans sought modification based on a material change in

circumstances due to Elizabeth's upcoming emancipation, her enrollment in college, and the fact that Robert stays at Evans's home six months out of the year. Evans also requested that Beverly be held in contempt for violating telephone privileges, and that she be held responsible for Evans's attorneys' fees.

¶2. A trial was held on October 16, 2006, following which the chancellor denied both parties' requests for modification, including Beverly's plea for back child support, as well as Evans's request that Beverly be held in contempt of court, and held that each party was responsible for his and her own attorney costs. The chancellor ordered Evans to resume paying Beverly the lump sum of $2,000 per month for child support in the manner set forth in the decreed settlement. The chancellor ordered that Robert should be provided with an automobile, and that both parties were to pay for Robert's future college expenses. The parties were ordered to share proportionately in all the expenses thereof; seventy-five percent to be paid by Evans, and the remaining twenty-five percent by Beverly.

¶3. Following judgment, Evans moved the trial court to reconsider its prior decision denying modification, and included a motion asking the court to clarify whether the parents were to share in college and automobile expenses or only college expenses in general. The chancery court granted the clarification request, and ruled that Evans and Beverly are to pay for both children's car expenses as well as college expenses, seventy-five percent/twenty-five percent, respectively. The chancellor reaffirmed that neither party would be required to pay for such expenses upon each child reaching emancipation. The chancellor denied Evans's motion to reconsider the modification request. Evans appeals to this Court.

**FACTUAL BACKGROUND**

2

¶4.    The parties were granted a divorce on the grounds of irreconcilable differences by the Chancery Court of Washington County in December 1998. The decree approved the parties' incorporated marital settlement agreement as to child custody, support, and property division. Accordingly, Evans agreed to pay to Beverly the sum of $2,000 per month for the support and maintenance of their two minor children, Elizabeth and Robert, ages thirteen and seven, respectively, at the time of the divorce. Out of this amount, Evans was to pay the monthly note toward the mortgage on the marital home, approximately $550 per month, and Beverly was to pay for each child's private-school education, approximately $320 per child, each month during the school year. The parties were to share joint physical and legal custody of the children. The marital home would remain Beverly's residence. Evans would continue to cover the children under his medical insurance plan; he would also pay seventy-five percent of any medical expenses not covered by insurance, with Beverly responsible for the remaining twenty-five percent. Evans was to maintain not less than $300,000 in life insurance, with the children as beneficiaries, with this obligation to terminate when the children are emancipated or reach the age of twenty-one, whichever occurs first. Both Evans and Beverly specifically released each other from any claim for alimony, either periodic or lump-sum.

¶5.    At trial, Beverly testified that, beginning on September 1, 2005, Evans unilaterally decreased the amount of child support that he was paying each month. Beverly claimed that Evans began paying only the house note (which had increased to $590 per month) and Robert's private-school tuition (approximately $322 per month), thereby shorting her approximately $1,088 per month.

3

¶6. Evans disputed Beverly's claim, but did not deny reducing his monthly support payments. Evans claimed that he did so due to Elizabeth's enrollment in college and need of extra support, and because Beverly was no longer in need of money for Elizabeth's private-school tuition. Evans submitted evidence showing that from September 1, 2005, until November 2006, the time of trial, he had paid $30,100 in child support, averaging $2,150 per month. Evans also testified that he had been paying an additional sum of $200 a month toward Elizabeth's car, and approximately $80 a month in car insurance.

¶7. The chancellor found that Evans, without permission from the court, had unilaterally modified the original settlement agreement. Evans was ordered to resume paying Beverly $2,000 per month in child support in the manner set forth in the decreed settlement, and to continue the payments until the emancipation of the youngest child, Robert. The chancellor also determined that, because Evans had provided funds in excess of the support required of him for both children throughout, he did not owe back child support.

¶8. The chancellor ruled that Elizabeth's enrollment in college constituted a material change in circumstances, finding for both parties on this ground; but he declined to modify the $2,000 support obligation for either party. The chancellor also found that Beverly's income had increased since the time of the divorce decree, but that Evans's had not. The chancellor therefore ordered Beverly to begin assisting Evans with both Elizabeth's college expenses and her car expenses, in the proportional share of twenty-five percent.[1] Finally, the

[1] Evans and Beverly filed a joint tax return in 1998; Evans reported $60,493 as his adjusted gross income, Beverly reported $8,252. In 2005, Beverly reported $30,540 as her adjusted gross income. Evans testified at trial that his income for 2005 had not increased above that reported in 1995, though he stipulated that his income was intermingled with his new wife Susan's income. Evans and Susan filed a joint return in 2005, with a reported

4

trial court ruled that both parties were to share Robert's future college and automobile expenses, in the same seventy-five/twenty-five proportional amount.[2]

## DISCUSSION

¶9.    Domestic-relations matters are reviewed under the limited substantial-evidence/manifest-error rule. ***Giannaris v. Giannaris,*** 960 So. 2d 462, 467 (Miss. 2007) (citing ***R.K. v. J.K.,*** 946 So. 2d 764, 772 (Miss. 2007); **Mizell v. Mizell,** 708 So. 2d 55, 59 (Miss. 1998)). A chancellor's findings will not be disturbed "unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." ***Id.***

### I. WHETHER THE CHANCELLOR ERRED BY NOT REDUCING THE TWO-THOUSAND-DOLLAR CHILD-SUPPORT PAYMENT.

¶10.    At the outset, Elizabeth has since turned twenty-one, and is now legally emancipated. Evans does not raise or dispute the chancellor's decision ordering the payment of Elizabeth's college expenses. Though now moot, this matter was intertwined at trial with the issue at hand and warrants discussion. To avoid confusing the chancellor's treatment between the two, the portion of the chancellor's ruling pertaining to the payment of Elizabeth's college expenses will be discussed in the last part of this opinion, for clarity.

¶11.    Evans's argument centers on the trial court's refusal to modify the $2,000 child-support obligation despite what Evans claims was a material change in circumstances in his

---

adjusted gross of $144,406; $86,539 of which was earned by Susan.

[2] The chancellor did not state his reason for this share. Although the proportional structure of seventy-five/twenty-five ordered by him apparently comes from the parties' original settlement agreement, in which Evans "agreed to pay 75% of all medical, dental, orthodontic, drug and related expenses of the children not covered by insurance," with Beverly agreeing to pay the remaining twenty-five percent.

5

favor. This change was that Elizabeth would soon reach the age of twenty-one, that she was no longer incurring private-school tuition, and that Robert lives with Evans much of the year.[3] Evans submits that the chancellor found for him on these grounds but he felt, under *Varner v. Varner,* 588 So. 2d 428 (Miss. 1991), that he could not reduce his child support. Evans asserts that the trial court misinterpreted *Varner,* and avers that the trial court's decision not to modify the $2,000 support obligation to reflect this change results in an unfair windfall for Beverly. We do not agree.

¶12.    The reason for the chancellor's application of *Varner* in this matter was chiefly twofold. First, the trial court found both that Evans unilaterally had modified his support payments without the court's permission, but also that he had continued to provide sufficient support for both children. To resolve this conflict, the chancellor relied on this Court's finding in *Varner.*

¶13.    *Varner* reiterated that "[n]o party obligated by a judicial decree to provide support for minor children may resort to self help and modify his or her obligation with impunity." *Varner,* 588 So. 2d at 433 (citing *Cumberland v. Cumberland,* 564 So. 2d 839, 847 (Miss. 1990)). *Varner* also reaffirmed the Court's longstanding view that child-support obligations are for the benefit and protection of children, and that the children's interest weighs in the judicial mind far heavier than that of either parent. *Id.* at 432 (citing *Lawrence v. Lawrence,* 574 So. 2d 1376, 1381 (Miss. 1991); *Cumberland,* 564 So. 2d at 847; *Nichols v. Tedder,* 547 So. 2d 766, 781 (Miss. 1989); *Alexander v. Alexander,* 494 So. 2d 365, 368 (Miss. 1986)).

---

[3] Evans did not include the issue of private school in the pleadings of his counterclaim; however, there was an on-the-record discussion pertaining to this issue at trial.

6

Therefore, in a situation where a supporting parent claiming to have made payments directly to the child can prove such payment, the parent may receive credit for having paid child support, "where to hold otherwise would unjustly enrich the [non-supporting parent]." ***Id.*** at 435 (citing ***Alexander,*** 494 So. 2d at 368).[4]

¶14. The chancellor found that Evans had continued to provide sufficient support for both children, although not in the manner and means set forth in the decreed support agreement. Thus, the chancellor denied Beverly's claim for back child support based on the same equitable principle explained by this Court in ***Varner.***

¶15. Secondly, in addressing Evans's argument that Elizabeth's coming emancipation would result in an unfair windfall for Beverly, the chancellor expressly relied on ***Varner***. Along with the Court's instructive reminder to be mindful of situations necessitating the need for equity, ***Varner*** reaffirmed another well settled principle: For global child-support payments providing for two or more children, the emancipation of one child does not automatically reduce the lump-sum payment. ***Varner,*** 588 So. 2d at 433 (citing ***Wilson v. Wilson,*** 464 So. 2d 496, 497-98 (Miss. 1985); ***Schilling v. Schilling,*** 452 So. 2d 834, 836 (Miss. 1984); ***Moore v. Moore,*** 372 So. 2d 270, 271 (Miss. 1979)). Citing ***Moore***, the ***Varner*** opinion noted the following reasons for this view: First, global child-support orders may contemplate that a base amount would be required, regardless of the number of children,

---

[4] ***Varner's*** use of the term "unjust enrichment" was in the context of granting equitable relief (in the form of credit) to a supporting father who, though in violation of the terms of a decreed support obligation requiring that payment be made directly to the mother, had paid child support directly to his children. *See **Varner,*** 588 So. 2d at 434 (instructing that equity may at times call for "ex post facto approval of extra-judicial adjustments in the manner and form in which support payments have been made").

with an undetermined amount for each child included in the periodic payment. Second, a child-support payment is not based solely on the needs of the minor children, but takes into account the ability of a parent to pay child support; consequently, a child-support order may not accurately reflect the amount actually required for the support of children, but may reflect only the amount a parent can afford to pay. Third, considering an undivided child-support obligation as equally divisible among the children overlooks the possibility that the requirements of the individual children may vary widely, depending upon the circumstances of each child. *Varner,* 588 So. 2d at 433 (citing *Moore,* 372 So. 2d at 277).

¶16. *Varner* added nothing new to the principles and policies undergirding our law on child support. The law governing this area was, and remains, well settled: "There can be no modification of a child support decree absent a substantial and material change in the circumstances of one of the interested parties arising subsequent to the entry of the decree sought to be modified." *Gillespie v. Gillespie,* 594 So. 2d 620, 623 (Miss. 1992) (citing *Caldwell v. Caldwell,* 579 So. 2d 543, 547 (Miss. 1991); *Clark v. Myrick,* 523 So. 2d 79, 82 (Miss. 1988); *Adams v. Adams,* 467 So. 2d 211, 214 (Miss. 1985)). The change must occur as a result of after-arising circumstances of the parties, not reasonably anticipated at the time of the agreement. *Tingle v. Tingle*, 573 So. 2d 1389, 1391 (Miss. 1990); *Clark,* 523 So. 2d at 82; *Shaeffer v. Shaeffer,* 370 So. 2d 240, 242 (Miss. 1979). Some of the factors which may be considered in determining whether a material change has taken place include: (1) increased needs caused by advanced age and maturity of the children; (2) increase in expenses; (3) inflation; (4) the relative financial condition and earning capacity of the parties; (5) the health and special needs of the child, both physical and psychological; (6) the health

8

and special medical needs of the parents, both physical and psychological; (7) the necessary living expenses of the non-custodial parent; (8) the estimated amount of income taxes the respective parties must pay on their incomes; (9) the free use of a residence, furnishings, and automobile; and (10) such other facts and circumstances that bear on the support subject shown by the evidence. *Adams,* 467 So. 2d at 215 (citing *Brabham v. Brabham,* 226 Miss. 165, 84 So. 2d 147 (1955)).

¶17.    Standing alone, the fact that Elizabeth no longer needs private-school tuition is not an unanticipated change in circumstances.  Morever, the judicially approved child-support agreement mentions only that Beverly is to pay for each child's private-school tuition from the global child-support payment.  Further, the record reveals that, prior to reducing the amount, Evans remitted the full payment (minus the house note) each month, even during periods when both children were not in school and incurring the need for tuition.[5]

¶18.    This was a judicially approved arrangement, freely and voluntarily entered into by the parties at the time of the their divorce.  Arguably, had Evans been ordered by the court to pay this amount solely to provide the two minor children with a private-school education, his argument might have merit.[6]  But this was not the case.  In the spirit of *Moore,* via *Varner,*

---

[5] When taking into consideration the $590 monthly mortgage payment that Evans subtracted from the $2,000 obligation, the actual payment submitted to Beverly each month was $1,410.

[6] In his brief to the Court, Evans attempts to advance his argument with the following hypothetical: If he were to pay off the entire mortgage to the marital home, would he then have to begin paying Beverly the $590 that he was responsible for remitting to the lender each month?  Response: Unlike the children's private-school tuition, the payment of the house note is not Beverly's responsibility, and the provision pertaining to that arrangement makes this clear.

9

the chancellor was within his authority in denying a downward adjustment of the global support obligation, despite the fact that Elizabeth is no longer incurring the need for private-school tuition. *Varner,* 588 So. 2d at 433 (*citing Moore,* 372 So. 2d at 277).

¶19. Similarly, the fact that Robert lives in Evans's home half of the time is not an unforeseeable change in circumstances. Evans and Beverly agreed to share in the joint physical and legal custody of both minor children, and they formulated the amount of child support with this in mind.

¶20. Upon review of the record, we find that the chancellor's decision to deny Evans's modification request was not manifestly wrong. The chancellor's decision to deny Evans's request for downward modification is affirmed.

> ## II. WHETHER THE COURT'S DECISION ORDERING EVANS TO PAY A PERCENTAGE OF ROBERT'S COLLEGE EXPENSES WAS ERROR.

¶21. Evans contends that the chancellor erred by requiring him to pay seventy-five percent of Robert's future college expenses. Evans avers that Beverly made no request for Robert's college expenses in her pleadings, and that no evidence was adduced at trial regarding Robert's plan to go to college; his aptitude for college; or Evans's ability to pay. For the most part, we agree.

¶22. College expenses, though not technically child support, may be awarded by the chancery court. *Lawrence,* 574 So. 2d at 1382; *see also Southerland v. Southerland,* 816 So. 2d 1004, 1006 (Miss. 2002) (recognizing that college tuition is part of child support) (citation omitted). The court may adjudge that one or both parents should provide the means for college education for their minor children. *Rankin v. Bobo,* 410 So. 2d 1326, 1328

10

(Miss. 1982) (citing *Pass v. Pass,* 238 Miss. 449, 118 So. 2d 769 (1960)).  The law also recognizes that college is expensive and can cause much sacrifice on the part of the parents. *Id.* at 1328-29.  Thus, such sacrifice ordinarily cannot be demanded, but must be earned by children through respect for their parents, love, affection, and appreciation of parental efforts. *Id.* at 1329.  "When a [parent's] financial ability is ample to provide a college education and the child shows an aptitude for such, the court may in its discretion, after hearing, require the [parent] to provide such education."  *Saliba v. Saliba,* 753 So. 2d 1095, 1101 (Miss. 2000). But the parental duty to send a child to college is not absolute; rather it is dependent upon the proof and circumstances of each case.  *Rankin,* 410 So. 2d at 1328 (citing *Hambrick v. Prestwood,* 382 So. 2d 474 (Miss. 1980)).

¶23.    The chancellor's order that both parties share in Robert's future college expenses without either party raising the issue in their respective pleadings is not a procedural concern. *See Brennan v. Brennan,* 638 So. 2d 1320, 1325 (Miss. 1994) ("the submission of child support to a chancellor includes all matters touching on that subject") (internal quotation marks omitted).  The problem lies, however, with the lack of evidence pertaining to Robert's future college expenses.  Though there was clear evidence demonstrating a good relationship between Evans and Robert, and, arguably, some evidence indicating that Robert possesses the aptitude for college,[7] no evidence was presented as to when, where, or if Robert may go to college.  Further, the chancellor's award of college expenses was not specific as to what

----

[7] During an on-the-record discussion between the parties concerning Robert's need for a tutor in geometry, the parties indicated that Robert was maintaining good grades in the rest of his subjects.

it encompassed (tuition, books, housing, incidentals, etc.). Thus, there was no proof as to what Robert's specific needs will be in the future, or as to Evans's financial ability to meet those needs.

¶24. The decreed settlement in this case does not mention anything about providing a college education for the two minor children. Therefore, ordering the payment of college expenses requires modification of the decreed settlement agreement, premised on a finding that there has been a substantial and material change in circumstances since the original decree. *Lawrence,* 574 So. 2d at 1382. Here, evidence did not reveal a substantial and material change in circumstances warranting a decree modification; thus the modification was manifest error.

### III. COLLEGE EXPENSES.

¶25. The chancellor awarded payment of Elizabeth's college expenses based on a proper finding that a material change in circumstances had taken place, and included a written finding justifying his decision. Though the order did not so specify, it appears that the payment of college expenses was intended to assist Elizabeth with incidental expenses only. The record discloses that Elizabeth received both a Pell Grant and a low-interest loan, which Evans co-signed, to help meet her tuition needs. The amount Evans subtracted from the child-support payment to send directly to Elizabeth was to help pay for meals, books, sorority dues, etc.. Facially, the chancellor's decision that Evans and Beverly pay for Elizabeth's college expenses in the proportional share of seventy-five percent and twenty-five percent, respectively, appears reasonable under the circumstances. But how this proportional

12

structure was to operate fairly alongside the restored child-support payment is not altogether clear.

¶26.    For clarity only, we point out that because college expenses are considered part of child support, such awards ordinarily are not calculated separately from child-support awards. *Southerland,* 816 So. 2d at 1006; *but see Varner,* 588 So. 2d at 435 (noting that funds, unilaterally subtracted from support obligations, to cover the costs of college tuition will seldom qualify as credit against the support obligation, "as they do not diminish the child's need for food, clothing and shelter") (citations omitted).   Child-support awards exceeding the statutory guidelines set forth in Mississippi Code Annotated Section 43-19-101 require the chancellor to consider the following criteria:

(a) Extraordinary medical, psychological, educational or dental expenses.

(b) Independent income of the child.

(c) The payment of both child support and spousal support to the obligee.

(d) Seasonal variations in one or both parents' incomes or expenses.

(e) The age of the child, taking into account the greater needs of older children.

(f) Special needs that have traditionally been met within the family budget even though the fulfilling of those needs will cause the support to exceed the proposed guidelines.

(g) The particular shared parental arrangement, such as where the noncustodial parent spends a great deal of time with the children, thereby reducing the financial expenditures incurred by the custodial parent, or the refusal of the noncustodial parent to become involved in the activities of the child, or giving due consideration to the custodial parent's homemaking services.

(h) Total available assets of the obligee, obligor and the child.

13

(i) Any other adjustment which is needed to achieve an equitable result which may include, but not be limited to, a reasonable and necessary existing expense or debt.

Miss. Code Ann. § 43-19-103 (Rev. 2004); *Chesney v. Chesney,* 910 So. 2d 1057, (Miss. 2005). The guidelines are a rebuttable presumption in the award or modification of child support; thus they do "not control per se the amount" of a child-support award. *Clausel v. Clausel,* 714 So. 2d 265, 267 (Miss. 1998). But in order to overcome the presumption, the chancellor must make an on-the-record finding that it would be unjust or inappropriate to apply the guidelines. *Chesney,* 910 So. 2d at 1061 (citing *McEachern v. McEachern,* 605 So. 2d 809, 814 (Miss. 1992)).

¶27. Thus, to modify a decreed support obligation already exceeding the statutory guidelines in order to award college expenses, the chancellor is required to take into consideration the criteria set forth in Mississippi Code Annotated Section 43-19-103, as well as the *Brabham* factors (mentioned in the first issue). *See Draper v. Draper,* 658 So. 2d 866, 869 (Miss. 1995) ("The statutory guidelines are used in conjunction with the [] *Brabham* factors to establish the appropriate award of child support."); *Brabham,* 226 Miss. 165, 84 So. 2d 147.

¶28. To achieve an equitable result, factual circumstances such as those raised by Evans in the first issue, though baseless pertaining to Elizabeth's emancipation, should be taken into consideration in a decision to award college expenses. *See generally e.g. Sumrall v. Munguia,* 757 So. 2d 279 (Miss. 2000). Concern, however, over whether the chancellor failed to do so here is abated by Evans's own testimony; in which he claimed that his total child-support expenditures each month throughout the period in question averaged $2,150.

14

¶29.   Finally, it is apparent that troubles began in this matter around the time that Elizabeth started college, an important time for everyone involved, and one which necessitated cooperation.

> Without doubt or hesitation, we encourage post-divorce detente that parents may *cooperate* in rearing their children. It follows that from time to time, adjustments can and should be made without burdening the courts.

*Varner,* 588 So. 2d at 434 (citation omitted) (emphasis added).

## CONCLUSION

¶30.   For the above reasons we affirm the chancellor's decision not to modify Evans's child-support payment; we reverse and remand the chancellor's order requiring payment of Robert's future college expenses for further proceedings consistent with this opinion.

¶31.   **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**WALLER AND DIAZ, P.JJ., GRAVES, RANDOLPH AND LAMAR, JJ., CONCUR. CARLSON AND DICKINSON, JJ., CONCUR IN PART. SMITH, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY CARLSON AND DICKINSON, JJ.**

**SMITH, CHIEF JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶32.   The majority finds manifest error by the special chancellor when he ruled that Robert's college expenses were to be divided by the parents–seventy-five percent to be paid by Evans and the remaining twenty-five percent to be paid by Beverly. From this finding of manifest error, I dissent.

¶33.   This Court can find manifest error only when the verdict "is a result of prejudice, bias, or fraud, or is manifestly against the weight of credible evidence." ***Boyd v. Tishomingo County Democratic Exec. Comm. & Members***, 912 So. 2d 124, 128-129 (citing ***Miss. Dep't***

*of Transp. v. Johnson*, 873 So. 2d 108, 111 (Miss. 2004)). That standard simply has not been met by the majority.

¶34. The majority finds manifest error in the modification of the decree due to the lack of a substantial and material change in circumstances. However, a substantial and material change in circumstances did in fact occur. This Court in *Adams* found that one factor in equating a change is "the relative financial condition and earning capacity of the parties." *Adams v. Adams*, 467 So. 2d 211, 215 (Miss. 1985) (citing *Brabham v. Brabham*, 84 So. 2d 147 (Miss. 1955)). In the case at bar, that is exactly what occurred. Beverly's income has increased by 400 percent since the decree. This increase in income is a change that occurred as a result of "after-arising circumstances of the parties" that "could not have been anticipated by the parties at the time of the original decree." *Tingle v. Tingle*, 573 So. 2d 1389, 1391 (Miss. 1990).

¶35. The majority concurs with Evans's contention that "Beverly made no request for Robert's college expenses in her pleadings, and that no evidence was adduced at trial regarding Robert's plan to go to college; his aptitude for college; or Evans's ability to pay." Maj. Op. at ¶ 21. However, the majority states that Beverly's lack of pleading is not a procedural concern. The majority finds that there was a "lack of evidence pertaining to Robert's future college expenses." Maj. Op. at ¶ 23. However, at no point does the majority argue that the modification was "manifestly against the weight of" the evidence presented at trial regarding Robert's college plans. Testimony was given at trial on Robert's status in his college preparatory classes, his age when he reaches college, and his conscientious

16

nature.  This evidence is more than sufficient to support the judgment in this case. I would affirm the special chancellor.

¶36.    For the above stated reasons, I respectfully concur in part and dissent in part.

**CARLSON AND DICKINSON, JJ., JOIN THIS OPINION.**