CARLTON, J.,
Concurring in Part and Dissenting in Part:
¶ 45. I respectfully concur in part and dissent in part with the majority’s opinion.
¶ 46. I concur with the majority’s decision to reverse the chancellor’s findings regarding the child-support modification. I agree the downward modification of child support lacked sufficient on-the-record findings, but I further submit the record reveals a lack of evidence sufficient to constitute an unanticipated material change in circumstances justifying a downward modification in child support from that ordered in the original judicial decree. To support any such finding of a downward modification of child support, jurisprudence recognizes that the burden to prove an unanticipated[12] material change belonged to Robert Evans. See Meeks v. Meeks, 757 So.2d 364, 367 (¶ 11) (Miss.Ct.App.2000) (finding the party seeking modification bears the burden of proving entitlement to the modification, which includes proof on the issue of the unexpected nature to the changes in circumstances); Tedford v. Dempsey, 437 So.2d 410, 418 (Miss.1983) (providing a foreseeable slight change in income fails to constitute an unanticipated material change). See also Miss.Code Ann. § 25-3-9 (Rev.2010) (authorizing the salary for part-time elected county prosecuting attorneys). Therefore, in my view, in addition to finding that insufficient on-the-record findings as to the deviation[13] from the statutory child-support guidelines exist, I find that the chancellor’s downward child-support modification also lacked a sufficient evidentiary basis[14] to support the chancellor’s downward modification.
¶47. Additionally, I dissent from the decision of the majority to reverse the chancellor’s findings as to contempt. We review civil-contempt decisions for manifest error. Dennis v. Dennis, 824 So.2d 604, 608 (¶¶ 7-8) (Miss.2002). Also, in an *1095 appeal of a contempt order, we will defer to the chancellor about his view of the witnesses, determination of their credibility, and his review of-exhibits in that context. Doyle v. Doyle, 55 So.3d 1097, 1110 (¶ 44) (Miss.Ct.App.2010). The evidence in this case supports the chancellor’s finding Robert in contempt for his non-compliance from January 2008 and forward, and it certainly supports a finding of contempt in response to Beverly Evans’s recent January 2009 motion for contempt. Additionally, a review of this case as a whole supports the chancellor’s civil-contempt decision providing evidence of credibility and the repeated willfulness of Robert’s actions,[15] and it shows that Robert possessed unclean hands in seeking his modification.
¶ 48. Precedent provides that we will only reverse for manifest error; we are required to affirm the chancellor’s decision of civil-contempt matters if supported by substantial credible evidence. Strain v. Strain, 847 So.2d 276, 278 (¶ 4) (Miss.Ct.App.2003). A review of the record shows substantial evidence to support the chancellor’s findings. With respect to whether Robert possesses clean hands, as necessary to receive the equitable relief that he seeks, the record displays a clear pattern of non-compliance by Robert with his child-support obligations since 2005,[16] predating the loss of his election. See Braw-dy v. Howell, 841 So.2d 1175, 1179-80 (¶¶ 14-19) (Miss.Ct.App.2003) (finding a husband was not entitled to a child-support modification where the husband offered no evidence to show an unanticipated change since the last court order, which was prepared and agreed to by the husband and approved by the court). See also Bailey v. Bailey, 724 So.2d 335, 337 (Miss.1998) (providing that the clean-hands doctrine prevents a complaining party from obtaining equitable relief when that party is guilty of willful misconduct regarding the matter in issue).[17] The July 28, 2009 findings of fact and conclusions of law, opinion, and order of the chancellor states as follows in pertinent part:
This matter was heard on May 13, 2009 on [Robert’s] (Petitioner’s) Motion to Modify as a result of his failure to be re[-]elected County Attorney of Washington County, Mississippi. Following the testimony supporting [Robert’s] said motion, the Court clarified its former ruling from a March 17, 2009 hearing in part as hereinafter shown and additionally ruled that [Robert] was in contempt for failure to conform to the Court’s original decree or order of divorce dated December 29, 1998[,] but that [Robert] not be sanctioned by incarceration; and the Court reiterated that [Robert’s] child support be reduced from $2,000.00 *1096 per month to $1,000.00 per month, as ordered in the March 17, 2009 hearing, to be payable $500.00 on the first day of each month and $500.00 on the 15th day of each month, commencing; April 1, 2009; that Plaintiff was in arrears in the amount of $14,750.00 in his payment of child support, which arrearage was to be paid in monthly installments of $200.00, payable $100.00 on the first day of each on the month and $100.00 on the 15th day of each month, commencing April 1, 2009; and that [Robert] pay to [Beverly’s] attorney the amount of $1,300.00, together with all costs herein of $133.00, and such amounts of attorney[’]s fee and court costs be paid within [sixty] days of said ruling on May 13, 2009; and further, that the reduced amount of $1,000.00 for child support and modified the March 17, 2009 order so that this matter be revisited in six months from May 13, 2009[,] to ascertain if [Robert’s] child support be restored to $2,000.00. Following that hearing[,] the Court, by telephone conference, ordered ore tenus that both parties file proposed findings of facts, conclusions of law[,] and order, although [Beverly’s] attorney had been ordered in the [c]ourtroom on May 13, 2009[,] to prepare such findings, conclusions^] and order for the Court. And now, after both parties have presented to the Court their proposed findings, conclusions and order, the Court hereby makes its findings of fact, conclusions of law[,] and order as follows:
FINDINGS OF FACT
The Court finds that from the testimony that [Robert] is an able bodied person, capable in his position as an attorney at law of many years of practice to earn a good living, and although he has prosecuted criminal cases for many years as [c]ounty [attorney, he is able to and should be able to use such experience to defend criminals as a criminal attorney, and should be given six months in order to hone his skills for such. Further, the Court finds that [Beverly’s] attorney is entitled to and should be paid the sum of $1,300.00 as reasonable attorney’s fee[s] for her services herein, and further, the Court finds that [Robert] should pay all costs herein of $133.00, which fees and costs should be paid within [ninety] days from the date of May 13, 2009. Further, the Court finds that [Robert] shall comply with all other provisions of said [¡Judgment of [d]ivorce dated December 29, 1998, as the same apply to life insurance premiums, medical insurance and school tuition for the minor child, Robert Evans.
OPINION OF THE COURT AND CONCLUSIONS OF LAW
The Court rejects [Robert’s] allegations in his [p]roposed [findings of [f]aets [a]nd [conclusions of [l]aw, except, however, as to his alleged disagreement to [Beverly’s] version of her [proposed [findings of [f]acts and [conclusions of [l]aw as to the amount in arrearage, and the Court is of the opinion that [Robert] is in [c]ontempt of this Court for his failure to pay the sum of $14,750[.00] in child support as ordered by this Court on December 29, 1998, and that his said child support should be reduced from $2,000.00 to $1,000.00, and to be paid in the manner and for the time as set out herein in this Court’s findings herein. Price v. Price, 5 So.3d 1151, [sic] (Miss.2009), Hunt v. Asanov, 975 So.2d 899 (Miss.2008). An award of attorney’s fees in a contempt case is proper and is left to the sound discretion of the [chancellor. ... Pursuant to the findings of this Court, the Court hereby orders as follows, to-wit:
ORDER OF THE COURT
*1097 IT IS, THEREFORE, ORDERED AND ADJUDGED that [Robert] is in contempt of this Court for his failure to pay child support in the amount of $14,750.00 as ordered by this Court on December 29, 1998, by paying such amount at the rate of $200.00 per month in installments of $100.00 on the first day of each month and $100.00 on the 15th day of each month, commencing June 1, 2009, but that his child support should be reduced from the sum of $2,000.00 to the sum of $1,000.00 commencing April 1, 2009, for a period of six months from May 13, 2009, at which time the Court would revisit this matter for further consideration.
IT IS FURTHER ORDERED AND ADJUDGED that [Robert] pay unto [Beverly’s] attorney the sum of $1,300.00, as well as, the costs of this court in the amount of $133.00 within [ninety] days from May 13, 2009.
¶49. Also, relevant to the contempt decision was the willfulness of Robert’s actions, which was reflected in the supreme court’s opinion that ruled on a previous attempt to modify the support, wherein the Mississippi Supreme Court[18] found that Robert did not deny unilaterally reducing his child-support payments in 2005. Evans v. Evans, 994 So.2d 765, 769 (¶ 12) (Miss.2008). A further review of the prior proceedings and rulings also reveals that while Robert’s appeal was pending before the supreme court,[19] he had already filed the motion to modify his child support on November 14, 2007. The supreme court, in its 2008 opinion, denied Robert’s request for a child-support modification due to the emancipation of his daughter, and ordered him to comply with the originally decreed child-support award. The record does not contain evidence that Robert ever complied with the supreme court’s prior decision before filing his new modification motion in 2007. Robert, therefore, never purged himself of his unclean hands due to his arrears. Meanwhile, Beverly had also filed another contempt action against Robert in January 2009, arguing that he failed to comply with the court’s original child support decree.
¶ 50. With respect to Robert’s actual income, as compared to his capacity to earn income, the law allows the chancellor to impute income to a payor who voluntarily fails to seek work or voluntarily fails to utilize his or her earning capacity and skills. See Selman v. Selman, 722 So.2d 547, 551-55 (¶¶ 14-36) (Miss.1998) (finding that the father’s earning capacity, rather than his actual earnings, should be considered, where the father quit his higher paying job to preach at a monthly salary of $700); Lahmann v. Hallmon, 722 So.2d 614, 621 (Miss.1998) (finding the father voluntarily reduced his income by leaving his construction job to sing two nights per week in a club). With respect to Robert’s earning capacity, a review of the record shows that a hearing occurred in the Chancery Court of Washington County on May 28, 2008, to hear motions for contempt filed by both Beverly and Robert and to hear evidence on Robert’s motion seeking a downward modification of the *1098 child support. The record reflects that, at the hearing, Beverly argued that because Robert failed to comply with the chancellor’s previous clear directive ordering him to pay child support, which included the house note obligation, Robert came into court with unclean hands seeking his downward modification. The record further shows that at the close of the hearing, the chancellor denied both Robert’s and Beverly’s contempt motions, and he denied Robert’s request for a downward modification of the child support.[20] The record shows that the chancellor then reset the matter for hearing in September 2008 to consider the matter further, thereby allowing Robert time to obtain another job utilizing his legal skills. The record reveals that, in making this decision, the chancellor found that Robert possessed marketable skills which he had failed to utilize in order to provide financial support for his children, and the chancellor encouraged Robert to utilize his skills as a “professional man and as a lawyer” in order to gain employment.
¶ 51. Following the May 2008 hearing, the record shows that the parties continued to return to court for further proceedings in the continuation of Robert’s request for a downward modification of his child-support obligations, as well as for the chancellor’s assessment of his employment efforts.[21] The record demonstrates that Robert argued, throughout the various hearings, that he suffered a loss of income due to his loss of a re-election bid as county attorney and that Beverly asserted, in response, Robert lacked a desire to be re-elected and failed to invest the effort required for a successful re-election bid. The record further reflects that, throughout the proceedings, the chancellor questioned Robert as to whether he had utilized his twenty years of prosecutorial skills and other legal skills to compensate for the loss of his position as county attorney. The chancellor also questioned Robert as to the expenditures he made during vacations and other things, while failing to improve his income. The record shows that the chancellor noted Robert’s loss of his elected position,[22] and readily acknowledged that the law required him to consider Robert’s earning capacity, rather than his actual income.
¶ 52. With respect to the sufficiency of the on-the-record findings as to the downward modification of child support, we must assess whether sufficient evidence exists in the record to support any such on-the-record findings to downward modification of child support above the statutory guidelines. With respect to the adequacy of the on-the-record findings, and with respect to any existing evidentiary basis to support such findings in order to modify Robert’s child-support obligation herein, the record shows that during cross-examination, Robert admitted that he knew that *1099 his defeat for re-election was possible,[23] and he denied saying that he did not want to be re-elected, despite the testimony by the children to the contrary. He also testified that his elected position paid very little for many years and that only recently had the salary increased.[24] The record reveals that the chancellor ultimately provided Robert with a downward modification, reducing his child support obligation from $2,000 to $1,000.
¶ 53. In closing, as to the lack of findings in the record to support a deviation from the child-support guidelines, the majority finds that the chancellor’s on-the-record findings are insufficient to support a deviation from the statutory child-support guidelines in this case. I agree, but I assert that I would also reverse the chancellor’s downward modification due to a lack of evidentiary sufficiency to support such findings to modify due to a failure to show an unanticipated material change in circumstances as a result of the foreseeable loss of his election. The supreme court, in its previous decision in this case, spoke to the issue of an upward modification of previously decreed child support that already exceeded statutory guidelines, and the court explained that such an upward modification required on-the-record findings. Evans, 994 So.2d at 773 (¶ 26). Further, I find no case law requiring on-the-record findings when a chancellor orders a downward modification of an already awarded, and affirmed, child-support obligation that exceeded statutory guidelines.
¶ 54. A review of the evidence in this case reflects that Robert sought this modification with unclean hands, and the record lacks sufficient proof of an unanticipated material change. Robert, therefore, failed to present evidence of the unexpected or expected nature of his change in circumstances. As stated, Robert bore the burden to show his entitlement to the downward modification, and he also bore the burden to show how the loss of an elected part-time position constituted an unanticipated material change. The record shows that Robert testified that he knew at the time of the original decree he could lose the election, and the record shows that Beverly testified that Robert’s loss of a political election was not an unanticipated material change, as Robert displayed no desire or effort to seek re-election. See Weeks v. Weeks, 29 So.3d 80, 90 (¶ 44) (Miss.Ct.App.2009) (citing Tingle, 573 So.2d at 1391) (finding that a material change in the circumstances of the parties warranting a downward modification in child support must be “one that could not have been anticipated by the parties at the time of the original decree.”). Furthermore, I find significance in the supreme court’s acknowledgment, in its prior ruling regarding these parties, that the original decree was a judicially approved negotiated arrangement that was freely and voluntarily entered into by the parties at the time of their divorce. Evans, 994 So.2d at 771 (¶ 18).
¶ 55. In affirming the chancellor’s child-support award of an amount above the statutory guidelines in this case, the su *1100 preme court reiterated the principle that on-the-record findings are required if the chancellor determines that it would be unjust or inappropriate to apply the child-support guidelines as set forth in Mississippi Code Annotated section 48-19-101 (Rev.2009). Id. at 772-73 (¶ 26) (citing Miss.Code Ann. § 43-19-108 (Rev.2004)); see also Draper v. Draper, 658 So.2d 866, 869 (Miss.1995). The supreme court then stated that “[cjoncern, however, over whether the chancellor failed to do so here is abated by Evans’s own testimony; in which he claimed that his total child-support expenditures each month throughout the period in question averaged $2,150,” an amount which exceeded his child-support obligations. Evans, 994 So.2d at 773 (¶ 28).
¶ 56. Furthermore, as to my view on the chancellor’s contempt decision and award of attorney’s fees, I dissent from the majority’s decision to reverse the chancellor’s findings as to Robert’s contempt, since the record before us, and the supreme court’s prior opinion regarding these parties, reflect a willfulness in Robert’s failure to comply with court orders and the original decree.[25] I submit that we should affirm the chancellor’s findings as to contempt[26] since the contempt decision is supported by substantial, credible evidence in the record.[27] I further submit that the chancellor acted within his discretion in awarded the attorney’s fees to the prevailing party on the issue of contempt.

. Robert admitted in his testimony that he knew that he could lose his re-election for political office when he entered into the negotiated settlement in this case. Mississippi Code Annotated section 25 — 3—9(2)(h) (Rev. 2010) set the salary of the county prosecuting attorney at $25,000, with $1,000 to defray secretarial costs. The position received a substantial increase, effective October 2004, by statute, tying the salary to the salary amount of the county supervisors.

. During a previous appeal, the Mississippi Supreme Court affirmed the award of child support in this case that exceeded the statutory guidelines.

. The majority opinion states that the adequacy of the on-the-record findings in support on the downward child-support modification falls within the reach of our judicial review, but I find the sufficiency of the evidence in support of the downward modification falls beyond our review on appeal. However, any on-the-record findings in support of a child-support award deviating from the statutory guidelines must be supported by sufficient evidence in the record. Otherwise, the findings in the record are just dangling words with no legs to support them. With respect to the required level of sufficient evidence to support a modification in child support, Mississippi jurisprudence clearly provides that a modification of a child-support award must be supported by evidence of a material unanticipated change. Tingle v. Tingle, 573 So.2d 1389, 1391 (Miss.1990).

. See Doyle, 55 So.3d at 1110 (¶ 44) (recognizing the chancellor sits as the fact-finder in civil-contempt proceedings, and appellate courts must give the chancellor great discretion upon review of his fact-heavy decision, reversing only upon manifest error).

. We again note that we review civil-contempt decisions for manifest error. Jones v. Mayo, 53 So.3d 832, 838 (¶ 21) (Miss.Ct.App.2011) (citing Dennis v. Dennis, 824 So.2d 604, 608 (¶¶ 7-8) (Miss.2002)). We also recognize that we review a lower court's denial of attorney’s fees for abuse of discretion. Id.; see also Seghini v. Seghini, 42 So.3d 635, 643 (II31) (Miss.Ct. App.2010) (reviewing an award of attorney’s fees based on a finding of contempt for abuse of discretion).

. See also 4 Deborah H. Bell, Divorce and Domestic Relations, Encyclopedia of Mississippi Law § 28:23 (Jeffrey Jackson & Mary Miller ed.2001) (providing a review of jurisprudence finding that no modification is allowed under Mississippi law where the payor has unclean hands, and that the party in arrears is not entitled to a downward modification without establishing inability to pay the arrears).

. A review of the record further reveals that in November 2008, the supreme court affirmed the chancellor’s decision not to downwardly modify Robert’s child-support payments due to his older daughter’s emancipation, but reversed the chancellor’s order requiring that Robert pay more for speculative future college expenses of his son. Evans v. Evans, 994 So.2d 765, 773-74 (¶ 30) (Miss.2008). The court found that Robert's daughter’s emancipation failed to constitute an unanticipated material change. Id. at 771 (¶ 20).

. The supreme court did not hand down it decision in this case until November 20, 2008.

. The record shows that the chancellor reviewed the judgment of divorce, which provided that Robert pay $2,000 a month as child support, and noted that on January 1, 2007, the court had ordered Robert to continue to pay $2,000 a month in the manner as provided in the judgment of divorce dated December 29, 1998.

. The record reflects that the chancellor conveyed that he was to assess Robert's capacity to earn income.

.At the time of the original decree in this case setting child support, Mississippi Code Annotated section 25-3-9 provided that the county prosecuting attorney’s salary amounted to $25,000, with a $1,000 to defray secretarial costs. The statutory amendments reflect that the salary stayed the same until it increased substantially, effective October 2004, tying the salary to that of the salary amount of the county supervisors.

. The record shows that Robert did not go door-to-door campaigning and did not seek donations to support his candidacy. The record also indicates that Robert testified that his constituency also changed.

. While the majority finds that Robert’s failure to be re-elected to his political office resulted in a significant loss of income, I contend that Robert did not lose a large component of his income since in 1998, when the court initially decided the child-support award, Robert received very little compensation for his elected position.

.The supreme court’s decision provides that, beginning in September 2005, Robert unilaterally decreased the amount of child support that he was paying each month. Evans, 994 So.2d at 768 (¶ 7). While the chancellor ordered Robert to resume paying his originally decreed $2,000 child-support obligation until the emancipation of his son, he failed to do so. Id. Robert, therefore, failed to comply with his child-support obligation, which remained $2,000, until modified by the chancellor on May 13, 2009.

. I pause to note that I would also affirm the attorney’s fees awarded as a result of the contemptuous conduct.

. See Jones, 53 So.3d at 837 (¶ 15) (“Under the law of the case doctrine and general principles of comity, a successor judge has the same discretion to reconsider an order as would the first judge, but should not overrule the earlier judge’s order or judgment merely because the later judge might have decided matters differently.”).